Estate of Andrew W. Roth, Deceased, Olga Dicky Roth, Administratrix v. Commissioner.
Estate of Andrew W. Roth, Deceased v. Commissioner
Docket No. 32895.
United States Tax Court
1952 Tax Ct. Memo LEXIS 147; 11 T.C.M. (CCH) 697; T.C.M. (RIA) 52215; June 30, 1952
*147 George R. Sherriff, Esq., and Hunter Meighan, Esq., for the petitioner. Thomas R. Charshee, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax and additions for fraud under section 293(b) as follows: Year
Deficiency
Penalty
1943
$22,709.91
$11,354.96
1944
25,555.32
12,777.66
1945
39,393.81
19,696.91
1946
34,080.41
17,040.22 The Commissioner, in his brief, concedes the fraud issues for each year in view of a statement of the Court, at the close of the hearing, that the Commissioner had not sustained his burden of proof as to fraud. The statute of limitations bars assessment and collection of any deficiency for 1943, and the only issue for decision is whether the Commissioner correctly determined the deficiencies for 1944, 1945 and 1946. Findings of Fact The returns of the decedent for 1944 and 1945 were filed with the collector of internal revenue for the Third District of New York and that for 1946 was filed with the collector of internal revenue for the Fourteenth District of New York. The decedent died on January 21, 1947. He was survived by his *148 widow, Olga Dicky Roth. The decedent was engaged during the taxable years in the knit goods business, under the name of Roth-Getzoff Co., in which he owned a one-half interest. The record does not show that he had any other source of income during the taxable years. His returns reported his share of the income of that business as shown on its books. The record fails to show that the books of that business reflect the full amount of gross sales, particularly the amount of "over ceiling" prices received, for the taxable years or that the Commissioner was not justified in resorting to the increase in net worth method of determining income of the decedent for those years. The Commissioner, in conference with representatives of the petitioner and with some assistance therefrom, determined the net worth of the decedent at the beginning and end of each taxable year, using the cost of all assets. He added the expenditures of the decedent for each year to his increase in net worth for that year and substracted allowable deductions to determine net income. The deficiencies determined are the excess of tax on that net income over the tax reported on the returns. The widow of the decedent, *149 a few months after his death, found $65,910 in cash in a safe in their residence. That amount was used by the Commissioner as a part of the net worth of the decedent, but, since it was not known when he received it, it was assumed, at the request of the petitioner, that he received it ratably over the four taxable years. The petitioner has not shown that the income and deficiencies for the years 1944, 1945 and 1946 were incorrectly determined by the Commissioner. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioner argues that the determination of the Commissioner based upon net worth, instead of upon the books of the knit goods business, was arbitrary and improper. The evidence not only fails to support that argument but indicates affirmatively that the Commissioner had sufficient reason to conclude that the books failed to disclose all of the income realized in the business. Such evidence includes the testimony of Getzoff, the decedent's associate in the business, the testimony in regard to the $65,910 indicating that the business and the decedent received income not shown on the books and not reported by the *150 decedent, and the evidence of the increase in net worth in excess of income reported. The expenditures and deductions used by the Commissioner in determining the deficiencies are not attacked or questioned by the petitioner nor is the method of allocating the $65,910. The attack on the net worth statement is aimed principally at the figure for the beginning of 1943 and the figure for the end of 1946. There is practically no reason, which arises from this record, to question the opening figure and discussion of that weak contention is not justified. The petitioner introduced into evidence a statement sworn to by Olga which she said was "the statement of the account of the estate, the assets of the estate." It lists "all of the assets of the said estate which she has discovered." The total amount of assets shown on the exhibit, less life insurance which the Commissioner does not seek to include as an asset of the decedent in his net worth statement, is $136,660.70. The petitioner argues that the Commissioner's net worth figure of $201,253.96 for December 31, 1946, can not be right since the administrator was able to find as of January 21, 1947 only $136,660.70 worth of assets. The *151 argument does not stand up under analysis. It may be assumed that Olga's list was prepared and used in connection with her administration of the decedent's estate in the State of New York. The two schedules were prepared for different purposes and upon different bases so it is not surprising that they show different totals. Some of the items on the two lists are identical in all respects. These include an automobile, a cash item of $65,910, $8,000 of Treasury Bonds, and, on the liability side, a mortgage of $2,000. Olga's list includes United States War Savings Bonds at $6,250, apparently their value at maturity, whereas they are included in the Commissioner's schedule at $4,687.50, their cost. Olga's list included one small item not included in the Commissioner's list. Those items need no further discussion. The Commissioner's total includes five bank accounts in addition to the $65,910. The total of these five accounts shown on his list is $17,544.63. Olga's total includes only $8,235.70 representing money on deposit in banks, exclusive of the $65,910, but it also reports that $159.06 and $5,683.94 were transferred from joint accounts to Olga's personal account after the death *152 of the decedent. The sum of the accounts shown in Olga's total, plus these amounts not included in her total, is $14,078.70. The difference of $3,465.93 between the total bank account figures of the two schedules is not explained, but the one purports to show the total balances for December 31, 1946, whereas the other purports to show those balances for January 21, 1947, after the decedent's death. How much of the difference might be explained by expenditures incident to his last illness or other withdrawals made during the twenty-one day period has not been shown by the petitioner. Olga's list for January 21, 1947, shows: "One-fourth interest in Roth-Getzoff Co. Inc. approximately, $25,000", admittedly a guess as to its value. The Commissioner shows the decedent's interest in that business as of December 31, 1946 at $43,462.55. The parties have stipulated that the knit goods business was carried on as a partnership during the years 1944, 1945 and until July 1946 when the partners transferred their interests in the business to a corporation in exchange for its stock. Roth and Getzoff each owned one-half of the business when it was conducted as a partnership. The petitioner contends *153 that only 25 per cent of the stock was in the decedent's name at the time he died and 25 per cent was in the name of Olga. The record does not show when, if ever, during the taxable years the decedent transferred one-half of his interest in the business to Olga, but no claim is made that Olga paid him anything in connection with any such transfer or that it was other than a gift whenever it was made. The record does not show that Olga received or reported any income during the years 1944, 1945, or 1946. The purpose behind the Commission's statement or schedule was to show how much income the decedent received in each of the taxable years and for that purpose it would be proper to include in the list for the end of the year the cost of any property which the decedent might have given away during the year. This would include any bonds which he bought in the name of others, any money which he deposited in joint accounts, and any interest in the knit goods business which he might have given to Olga. Since the Commissioner's figure showing one-half of the capital in the business as of December 31, 1946 is less than twice Olga's approximate value of a one-fourth interest in the business, *154 the petitioner has nothing to complain about on this item. The principal difference between the two lists stems from the treatment of the family residence. It appears as follows on Olga's list: House and lot in Harrison, New
York, assessed for $22,580.00, sub-
ject to a mortgage held by Irving
A. Sartorius for $2,000.00
$20,580.00 The cost of the property is shown on the Commissioner's list at $14,000. $8,956.50 is shown as having been spent on improvements to the property during 1945 and $47,963.88 during 1946. The Commissioner deducts the mortgage of $2,000 and the property represents $61,963.88 of the total net worth of $201,253.96 as of December 31, 1946 shown on his net worth statement. There is no evidence in the record to show and no contention is made that the property did not cost $14,000 or that the amounts stated in the Commissioner's schedule were not spent in those years on improvements on the property. Thus, no defect is shown in the Commissioner's method of determining the deficiencies by Olga's irrelevant listing of the property at the amount at which it was assessed, less the mortgage of $2,000. The petitioner in this case had the usual burden *155 of proof to show that the Commissioner's determination is incorrect. No such showing has been made as to the determination of the deficiencies for 1944, 1945, and 1946, and, therefore, those determinations must be approved. Decision will be entered under Rule 50.